ED. F. NICHOLAUS V. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

| 90 | 85 |
|---|---|
| 94 | 387 |
| 90 | 85 |
| d107 | 602 |
| 90 | 85 |
| 120 | 417 |
| 90 | 85 |
| 124 | 39 |
| 90 | 85 |
| 129 | 5 |

Master and Servant: ASSUMPTION OF RISK. While defendant's fireman was acting as engineer, his negligence caused plaintiff, a brakeman, to be injured. *Held*, that the mere fact that plaintiff knew the fireman was so acting, and his failing to object does not preclude his recovering, as having assumed the risk, nothing appearing to show that plaintiff had reason to believe the fireman incompetent. (1)

PLEADING. Assumption of risk by plaintiff is an affirmative defense, and must be pleaded. (1)

ABSENCE OF PART OF CREW: NEGLIGENCE. Whether the absence of the conductor and the engineer, leaving but three of the crew, was or was not the cause of the improper movement of the train which led to plaintiff's injury, is for the jury. (2)

VERDICT: SUFFICIENT EVIDENCE. It appears that plaintiff, making a coupling, had signalled the acting engineer to stop, that the train had nearly stopped, that the plaintiff, while trying to change the link, had his hand caught between the bumpers by reason of the train's suddenly backing without notice. *Held*, that a verdict for plaintiff will stand. (2, 3)

*Appeal from Muscatine District Court.*—HON. W. F. BRANNAN, Judge.

TUESDAY, JANUARY 30, 1894.

ACTION for personal injuries. Judgment for the plaintiff, and the defendant appeals.—*Affirmed.*

*J. Karkskadden* for appellant.

*Jayne & Hoffman* for appellee.

GRANGER, C. J.—In November, 1888, the plaintiff was in the employ of the defendant, as a brakeman, and was running between Muscatine and Munn. He had been on this line about six months. In going out from Muscatine, after passing Wilton, there was a station called the "U. S. Limekilns," and Munn was still

further out. It was the custom, at the limekilns, to leave on the switch the passenger coach and baggage car, and the rest of the train would run to Munn, and returning it would attach the cars left when going out, and proceed toward Muscatine. It frequently occurred that the engineer would stop at Wilton, and from there, out and back, the engine would be in charge of the fireman; and it was quite usually the case that the conductor would remain at the limekilns with the coach, engaged in making his daily reports. On the seventh of that month the train consisted of an engine, several freight cars and the passenger coach. The engineer stopped off at Wilton, and the conductor remained, as usual with the coach at the limekilns. This left with the train the fireman, in charge of the engine, and the two brakemen, of whom the plaintiff was the front one. The train returned from Munn to the limekilns, and the plaintiff left the engine where he had been with the firemen, turned the switch, and let the train back to be coupled to the cars that had been left. In making this coupling, plaintiff's hand was injured, for which recovery is now sought. The petition charges negligence in several particulars; as, "absence of the engineer from his post of duty on the engine; carelessness of the fireman in charge of the engine, and his failure to perceive the signals given him by the plaintiff, and his failure to give signals, to the plaintiff, and running the cars together without warning, and in suddenly starting the train, and bringing the cars together, after they had almost come to a stop, and absence of the conductor, and his failure to see and superintend the switching of the train." The coupling was made at a curve in the track, and, because of better ground to walk on, the plaintiff was on the left hand side of the train, walking with his hand on the ladder, when he gave the signal to stop as the moving part of the train approached the cars to be coupled on. He says it nearly stopped, and,

as he was "changing the link, it came back with a sudden start," and his hand was caught between the bumpers and injured. It appears that the train was backing up cautiously to where it stopped, or nearly so, and the wrongful or negligent act was in starting it again without a signal from the plaintiff, and that none had been given. As we gather from the record, the movements of the train at the particular time were upon signals from the plaintiff as he was about to make the coupling. He had signalled it to stop as being at the point of coupling. It having stopped, or nearly so, he attempted to change the link from one drawbar to the other, in order to properly make the coupling, and he had a right to suppose there would be no further movement of the train until he should direct it. The link being fast in the drawbar from which it was to be taken, it required some effort to remove it, and, in doing this his hand came between the bumpers and a sudden unexpected movement of the train caught it. The negligent act seems to have been attributed directly to the person acting as engineer, and a particular act of negligence charged against the defendant is that of the fireman as engineer. The court gave the following instruction: "9. If you find that the engineer left the management of the engine to his fireman on the trip during which the accident occurred, and this was with the knowledge of the plaintiff and without objection from him, this is a circumstance from which the consent of the plaintiff to such substitution may be inferred; but if the plaintiff himself was free from negligence that directly contributed to his injuries, and such injuries were the direct result of the carelessness and negligence of the fireman in charge of the engine, and you so find, he would be entitled to your verdict."

I. Complaint is made of the part of the instruction relative to the substitution, in that it merely holds that the exchange of the fireman for the engineer, if

with the knowledge of, and without objection from, plaintiff, would be a circumstance from which his consent might be inferred; appellant's claim being that, under such circumstances, his consent should be inferred. Otherwise than as the exchange might naturally be expected to affect his safety as an employee, the plaintiff had no concern with it. The rule contended for could have application only in a case where there was reason to believe the exchange would involve new perils to the employee. It was the right of the company to put any competent man in charge of the engine, and negligence could not be imputed to such an act. Hence, when a company places a man in charge of an engine, it is not for an employee to question his competency; but, on the contrary, he may, from the fact that he is placed there, assume that he is competent. It does not appear that the plaintiff had reason to believe that the fireman was not competent for the service alloted to him as engineer on the part of the line where he so acted. It is not to be said that because he knew of his acting in that capacity, and did not object, he consented thereto in a way that he assumed additional hazards on account of it. The instruction is not open to the complaint made against it, nor can the rule urged by appellant be sustained.

A further complaint of the instruction is that it fails to advise the jury of "any legal effect to be given to such consent of the plaintiff;" and it is said that no other instruction tells the jury "what effect upon the rights of the plaintiff, or liabilities on the part of the defendant, is to be produced by, or is to flow from, such consent." It is true that the court does not, in its instructions, give any legal effect to the fact of consent, if it should be found, and the language, as it is, serves no beneficial purpose. We can not, however, see that it could prejudice the defendant, for the effect claimed by it could not have been given, and was, in fact,

denied by the refusal of instructions in which was asked a rule that, if the plaintiff knew of the fireman acting as engineer and did not object, "protest, or complain, that he might be considered as having waived and acquiesced in * * * the running of the locomotive by the fireman," and that he was "estopped from recovery" because of injuries resulting, etc.; and appellant complains that the instructions were not given. It will be seen that the instructions asked that a rule of estoppel be applied to the plaintiff because of his acts, or failure to act or speak when he should have done so. Without agreeing to the rule as asked, the holding of the court must be sustained on the ground that no such an issue was in the case. If defendant relied upon plaintiff's conduct as an estoppel from recovery, it was an affirmative defense, to be pleaded and proven as it is in all civil proceedings at law. *Independent Dist. of Burlington v. Merchants' Nat. Bank*, 68 Iowa, 343, 27 N. W. Rep. 255.

II. It appears that during the coupling of the cars, when the injury occurred, the conductor was in the coach, and had no part in completing the train at that point; and defendant asked the court to say to the jury as follows: "The fact that the conductor of the train did not personally superintend the coupling of the cars together can not be charged against the defendant as negligent conduct." The court refused the instruction. We do not think that there was error in the refusal. The regular train crew consisted of the conductor, engineer, fireman, and two brakemen. When the injury occurred, but three of the five were on duty, and the duties of the absent ones devolved on the others. It was surely proper for the jury to consider whether or not this shortage in the train crew was the cause of the improper management or movement of the train resulting in the injury.

III. It is urged quite strenuously that the verdict has not support in the evidence; but we think it has full support. It appears that the plaintiff was directly in the line of his duty when injured, doing the particular thing necessary to be done to make the coupling, and relying on the fact that, until he should give directions, the train would remain where it had been stopped by his directions. He was engaged in changing the pin, in doing which his hand came between the bumpers, when the negligent act of the fireman in starting the train back without notice caught and injured it. The judgment is AFFIRMED.