ERICK BARBO *vs.* JOEL B. BASSETT and another.

· September 6, 1886.

**Negligence—Master and Servant—Dangerous Machinery—Contributory Negligence.**—The complaint charges negligence on defendants' part in leaving certain dangerous machinery exposed, in consequence of which plaintiff was injured. *Held,* upon the evidence in the case, that the jury were to judge whether it was reasonably prudent, under the circumstances, to leave such machinery exposed; and also, upon the question of plaintiff's contributory negligence, whether the plaintiff was apprised of the danger, or, in the exercise of ordinary prudence, ought to have known it; and that these questions were properly submitted to them.

**Same.**—Certain instructions of the court considered, and *held* not erroneous, as explained and limited by the general charge.

Appeal by defendants from an order of the district court for Hennepin county, *Koon, J.,* presiding, refusing a new trial.

*Atwater & Hill,* for appellants.

*Welch, Botkin & Welch,* and *Nils Michelet,* for respondent.

VANDERBURGH, J. The plaintiff was employed by defendants as a laborer in their saw-mill, and commenced work on the 25th day of April, 1885. His principal business was to assist in sawing slabs. He was also required to assist another employe, styled an "edger," as occasion might require, in lifting heavy plank upon the edger's table, which was moved rapidly over rollers by means of cogs connected with the machinery of the mill. While at his ordinary work he stood with his back towards the table, and to attend to this special work he was obliged to turn, and go about six feet across a passage-way from his accustomed place of work. It required a quick movement on his part to reach and handle the plank as required. The evidence tended to show that when the plaintiff commenced work, and until about the first of June, the several sets of cogs connected with the rollers were covered with plank, but at the last date one set was uncovered, and so left till after the injury complained of, which occurred on June 7th, and was exposed from the top of the table, but covered on the sides. It also appears from the plaintiff's testimony that, being called suddenly· to help move an extra-heavy plank on

that day, and in attempting to reach over and pull it towards him while it was moving rapidly, his hand slipped, and was caught in the cogs and severely injured. The opening in the table where the cogs were uncovered was four or five inches square, and there is no reason why they could not have been protected, as well as the others, and in the same manner. The planks were run out from the circular saw ordinarily at the rate of two or three a minute, and had to be taken away instantly. They were of different lengths and sizes, which fact would regulate the position of the plaintiff, and the risk of danger from the cause here assigned. The plaintiff testifies that his attention had not previously been drawn to the position of the exposed cogs, and that they were not covered when he came to the mill, because, as he says, there was no change while he was there. The evidence, however, as we have seen, shows that they were covered, but he had not noticed the change.

It is obvious, we think, that many circumstances are to be taken into account in determining the question of defendants' liability in this case, and that the inferences of fact to be drawn therefrom were for the jury. *Hutchinson* v. *St. Paul, M. & M. Ry. Co.*, 32 Minn. 398, (21 N. W. Rep. 212;) *Craver* v. *Christian*, 34 Minn. 397, (26 N. W. Rep. 8.) The jury were to judge whether it was reasonably prudent to leave these cogs exposed, and of the circumstances under which they were left uncovered; and also in respect to the question of plaintiff's contributory negligence,—whether he was apprised of the danger, or, in the exercise of ordinary prudence, ought to have observed it. They were also to consider whether, from the character of his employment and the nature of his duties, the position in which he was placed at the time, the manner in which the work was required to be done, and the situation and character of the machinery, he exercised reasonable prudence in moving and handling the plank when he was injured. We think the trial court was right in submitting these questions to the jury.

2. The second assignment of error is that the court improperly allowed a witness, against the objections of defendants, to answer this question: "Do you know of any reason why this [cog] might not have been covered as well as the others?" We are unable to see any

objection to the evidence. The witness was subject to further examination as to the grounds of his conclusion, and, besides, in this case the fact is not disputed that the cogs could be covered; and that they were so covered both before and after the accident.

3. The disposition of the third, fourth, and fifth assignments of error is, we think, practically involved in the determination that the question of plaintiff's contributory negligence was for the jury. The defendants insist that the court erred in the suggestion or statement made to the jury upon the evidence, in substance, that the nature of plaintiff's duties and occupation in the mill might have been such that he did not observe the change in the matter of these particular cogs; and in refusing the instructions asked by them, to the effect that the danger was open and apparent, and one which a man of ordinary intelligence would be presumed to be acquainted with, and against which he must guard himself; and also that, if the plaintiff did not use ordinary care to see the defects in the machinery, he was negligent. In respect to the first of these alleged errors, it is proper to say that the language of the court in the particular part of the charge objected to must be considered in connection with other parts of the charge on the same subject, and also in connection with the fact that the evidence leaves it uncertain how much or how frequently the plaintiff was engaged at the edger's table between the first and seventh of June; that is, between the time of the removal of the board, commencing about June 1st, and the accident. And, as to the instructions which were refused, we think they were plainly covered by the general charge of the court. The court had, among other things, specifically charged "that any risks that are apparent and open to the employe, so that he knows them, or, by the exercise of ordinary care and the ordinary observation which men are supposed to give these matters, may understand, not only the defects, but the risks, he is presumed to take such risks, and all risks which are apparent and open on their face which he knows of, or which, by the exercise of ordinary care, he might know of." We think, taking the charge together, that the law of the case was properly explained and given to the jury.

Order affirmed.