PETER ERICKSON v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY AND ANOTHER.[1]

November 13, 1925.

No. 24,888.

**Complaint bad on demurrer whether on theory of turntable doctrine or theory of ordinary negligence.**

Defendants were operating a well-drilling outfit upon a public street. The power was furnished by a gasolene engine and transmitted by an ordinary drive belt. An eleven-year old child, with the knowledge of defendants, was playing about the machinery in the presence of an obvious danger. Defendants did nothing to warn him of such danger. The child came in contact with the drive belt and was injured. *Held*:

(1) That the complaint does not state facts sufficient to state a cause of action upon the theory of the turntable doctrine, because:

(a) The instrumentality was not of such character as to amount to an invitation; (b) the danger was patent and not latent; (c) the characteristics of the agency and its general and common use render it impractical and unreasonable to fence or guard by inclosure.

(2) That the complaint states facts sufficient to constitute a cause of action upon the theory of ordinary negligence in that under all the circumstances the facts stated imposed a duty upon defendants to have warned the child of the danger.

[1]Reported in 205 N. W. 889.

1. See Negligence, 29 Cyc. p. 465 (Anno).

2. See Negligence, 29 Cyc. p. 567.

1, 2. See notes in 19 L. R. A. (N. S.) 1130; L. R. A. 1917F, 94; 20 R. C. L. p. 93; 3 R. C. L. Supp. p. 1028.

Action in the district court for St. Louis county to recover for injuries to plaintiff's minor son. Defendant railway company appealed from an order, Grannis, J., overruling its demurrer to the complaint. Affirmed.

*Fryberger, Fulton, Hoshour & Ziesmer* and *John E. Palmer,* for appellant.

*M. E. Louisell,* for respondent.

WILSON, C. J.

This is an action brought by plaintiff for the benefit of his minor son to recover damages for personal injuries to the son. Defendant C. W. Roome answered. Defendant railway company demurred upon the ground that the facts stated in the complaint were not sufficient to constitute a cause of action. The trial court overruled the demurrer, but certified that the question presented by the demurrer was important and doubtful. The railway company appealed.

The complaint alleges the status of the parties. That defendants were engaged in drilling a well on the premises of the railroad company and in connection therewith used a derrick, pipes, pile hammer, gasolene engine with belt and paraphernalia used in raising and lowering pipes and apparatus. That such equipment was located in a thickly-settled portion of the city of Duluth and was operated on the southwest corner of Twentieth avenue West and West Michigan street. That this corner was generally used by pedestrians in crossing said corner diagonally from West Michigan street to the west side of Twentieth avenue west and vice versa and had been so used for many years last past, all to the knowledge of defendants. That the premises so being used by defendants were uninclosed and the equipment was within 20 to 30 feet of the two mentioned thoroughfares. That on February 7, 1925, defendants were engaged in

said project and were operating the gasolene engine with certain belting attached to pulleys on the engine and on the derrick and the same was being operated with great speed and the equipment was wholly unguarded and in such condition that it was easily reached and was attractive to young children playing about said premises on said corner, as the defendants well knew. That children were attracted to and were in the habit of playing about said equipment to the knowledge of defendants. That defendants negligently failed to guard said equipment by fence or otherwise. That at said times plaintiff's 11-year-old child and other children, all too young to appreciate and who did not appreciate the danger of doing so, were playing within a few feet of the operating derrick and gasolene engine, all unguarded as aforesaid, and that they were attracted by the operation of the belt and machinery, and plaintiff's son touched the belt with his hand on which he had a mitten and as the result thereof injuries followed, a part of which resulted in a wrenched arm and in the amputation of a thumb. That said children were seen by those in charge of the work, but that defendants did not take any steps to warn them of danger nor to protect them from the dangers to which they were exposed and that injuries and damage resulted.

It is the contention of plaintiff that the complaint states a cause of action under the doctrine of the turntable cases. It has long been the settled law of this state that, when a person sets before young children a temptation which he has reason to believe will lead them into danger, he must use ordinary care to protect them from harm. In Keffe v. M. & St. P. Ry. Co. 21 Minn. 207, 18 Am. Rep. 393, it was held that the defendant was guilty of negligence in leaving a turntable unfastened, because it was a place where children were induced to amuse themselves by putting it in motion when not fastened. The premises were such as to invite their presence, and the danger was not apparent, but concealed. Where the owner keeps the turntable fastened, there is no liability because then reasonable care is exercised. Kolsti v. M. & St. L. Ry. Co. 32 Minn. 133, 19 N. W. 655. Then the latent danger does not

exist. The foundation for liability in these cases is that such machinery or apparatus "being attractive to young children, presents to them a strong temptation to play with it, and thus allures them into a danger whose nature and extent they, being without judgment and discretion, can neither apprehend nor appreciate, and against which they cannot protect themselves; that such children may be said to be induced by the owner's own conduct to come upon the premises; that what an express invitation is to an adult, an attractive plaything is to a child of tender years; that as to them such machinery is a hidden danger—a trap." Twist v. W. & St. P. R. Co. 39 Minn. 164, 39 N. W. 402, 12 Am. St. 626; O'Malley v. St. P. M. & M. Ry. Co. 43 Minn. 289, 45 N. W. 440; Ellington v. G. N. Ry. Co. 96 Minn. 176, 104 N. W. 827. This doctrine seems to be grounded in the doctrine of Townsend v. Wathen, 9 East, 277, mentioned in the Keffe case, supra.

The doctrine under consideration should not apply when the nature of the work, the character of the instrumentality and the manner in which it is operated are patent. Emerson v. Peteler, 35 Minn. 481, 29 N. W. 311, 59 Am. Rep. 337. In Twist v. W. & St. P. R. Co. supra, Mr. Justice Mitchell said this:

"Properly qualified and limited in its application, the doctrine of the Keffe Case is, in our judgment, in accordance with both reason and the dictates of humanity. But some of the cases have undoubtedly gone too far. By adopting an extreme or extraordinary standard of duty on the part of the landowner on the one side, and on the other side by attributing the conduct of all children to their childish instincts so as to exempt them from the charge of contributory negligence, regardless of age or mental capacity, it is obvious that the rule of the Keffe and similar cases is capable of indefinite and unbounded applicability. To the irrepressible spirit of curiosity and intermeddling of the average boy there is no limit to the objects which can be made attractive playthings. In the exercise of his youthful ingenuity, he can make a plaything out of almost anything, and then so use it as to expose himself to danger. If all this is to be charged to natural childish instincts, and the

owners of property are to be required to anticipate and guard against it, the result would be that it would be unsafe for a man to own property, and the duty of the protection of children would be charged upon every member of the community except the parents or the children themselves."

One of the essential elements is that the machine is a temptation which the owner should know will lead children into danger. Haesley v. W. & St. P. R. Co. 46 Minn. 233, 48 N. W. 1023, 24 Am. St. 220. The temptation means, of course, an instrumentality of such enticing and alluring characteristics as to constitute, in law, an implied invitation.

The doctrine will be applied only when the facts come strictly and fully within the rule. Twist v. W. & St. P. R. Co. supra, Erickson v. G. N. Ry. Co. 82 Minn. 60, 84 N. W. 462, 51 L. R. A. 645, 83 Am. St. 410; Stendal v. Boyd, 67 Minn. 279, 69 N. W. 899. In the last case it is said that the doctrine of the turntable cases does not extend to a pond, although children are induced to go into it by its allurements. Ample reasons are given for the conclusion reached.

Running through the turntable decisions is the constant thought that the machinery involved is attractive to young children, and that the owner, by leaving it unguarded, is not only inviting young children to approach it, but that it holds out an allurement which, acting upon the natural instincts by which such children are controlled, draws them into a hidden danger. In Kayser v. Lindell, 73 Minn. 123, 75 N. W. 1038, it was held that this doctrine did not apply to a case where a 3½-year old child climbed upon a retaining wall and was injured by falling therefrom. It was there said that the case did not present a trap; that the wall was plain to be seen; that the child knew it was there and fell off of it in the daytime. In fact, in a very thoroughly considered case, Chief Justice Start said in Erickson v. G. N. Ry. Co. 82 Minn. 60, 84 N. W. 462, 51 L. R. A. 645, 83 Am. St. 410:

"The manifest trend, however, of all the decisions of this court is to limit its application to attractive and dangerous machinery, and to other similar cases where the danger is latent. We are not pre-

pared to say that cases may not arise outside of this classification to which the doctrine ought to be extended, but we do hold that as a general rule the doctrine of the turntable cases must be limited to cases of attractive and dangerous machinery, and to other similar cases where the danger is latent."

The doctrine applies where the dangerous instrumentality is dynamite. Mattson v. M. & N. W. R. Co. 95 Minn. 477, 104 N. W. 443, 70 L. R. A. 503, 111 Am. St. 483, 5 Ann. Cas. 498. In it the danger is latent. The instrumentality having a latent danger was, in Znidersich v. Minn. Utilities Co. 155 Minn. 293, 193 N. W. 449, recognized as being more susceptible to the doctrine when located in a public place which substantially removes the element of trespass usually present when private property is invaded. An unquestionably attractive instrumentality charged with latent danger incident to a defective lift in a country grain elevator was considered in Brandenberg v. Equity Co-op. Exchange, 160 Minn. 162, 199 N. W. 570, and the element of accessibility was emphasized as important in the case.

The case of Berg v. B. B. Fuel Co. 122 Minn. 323, 142 N. W. 321, tends to support plaintiff's contention, but an analysis of that case will show that the machine and the structure used in connection therewith were most unusual. The instrumentality was not a common one. This will appear more fully by the photographs thereof which are in the record in that case. Some difficulty may be experienced in arriving at the conclusion that the element of danger was latent and in the machinery, but perhaps that follows from the location of the overhead timber, danger from which would ordinarily be unobservable. The Berg case does not extend the principles involved in these cases, but does show that the doctrine is applicable to dangerous machinery other than turntables and will be applied to any such machinery that has the inherent qualities of the turntables which gives it the origin of the rule sought to be applied.

There must be an implied invitation which must arise from the instrumentality and the circumstances. The instrumentality here cannot be said to be especially enticing to children so as to amount

to an invitation within the spirit of our decisions, even though, like all mechanical apparatus or the operation thereof, it may attract the gaze or attention of children as well as adults. Ordinarily the doctrine applies only where the agency is enticing or alluring as something upon or with which the children may play. The machinery in question did not offer either a place or a thing for play. As far as being upon the premises was concerned, this child had a right there without an invitation, but we refer to the supposed constructive invitation to meddle with the agency in the spirit of play.

One of the essential elements is that of latent danger. Is there a latent danger in a gasolene engine with its pulley carrying a running belt on a pulley at the other end? Such an outfit in this age is a very common equipment. We need not enumerate the many machines in both city and country that are thus operated. It is not an unusual machine. The danger, as here experienced, is in the rapidly moving belt and the pulleys. Such danger is perfectly obvious. Even a child would know that it was as harmful as a blazing fire or the upturned scythe leaning against a fence. It is in the open. It is charged with open danger to one interfering or meddling therewith, but as opposed to this there is no latent danger which is so fundamentally necessary to permit the application of the rule of law. This mechanical outfit has nothing in the nature of a trap or secret danger. It is not deceptive. Its danger is as obvious to a small child as that of falling from a retaining wall. The existing danger was not hidden even to an inexperienced child. Whether he appreciated a patent danger is not the test. There is nothing to indicate to a child that he is at liberty to handle or play with it, even though it is attractive.

The turntable doctrine originates in the fact that a turntable when not in use can be made safe at slight expense. It is practicable to fasten it. When this may be done so readily, effectively and cheaply, it is not surprising that the rule was adopted to extend help to those not able to protect themselves. It therefore follows that the practicability and reasonableness of guarding the agency often mark the dividing line between a case in which this rule is

applied and a case in which it is not applied.  Because of its char-
acter and its general and common use, it would not do to say that
equipment of the kind here in question must be kept inclosed or
fenced.  Even if so, who could say what kind of a fence must be
built in view of the propensity and success of boys to climb fences?
There would be some justification to say that the instrumentality
should be fenced when in a public place if not on private premises,
but we are not inclined to make such distinction and impress, under
that condition as to place, such a cumbersome and impractical duty
upon the owner.

We hold that the facts in this case do not invoke the doctrine of
the turntable cases, because: (a) The instrumentality was not of such
character as to amount to an invitation; (b) the danger involved
was patent and not latent; and (c) the characteristics of the agency
and its general and common use render it impractical and unreason-
able to fence or guard by inclosure.  Hence the complaint does not
state facts sufficient to constitute a cause of action upon the theory
of the turntable doctrine.

The complaint says that the machinery was located upon defend-
ant's grounds used as a street to the knowledge and acquiescence of
defendant and near the real streets.  It gives the grounds the char-
acter of a street so that children had a right to be there and were
not trespassers.  It was also easily accessible from the actual streets.
The facts pleaded show that the instrumentality was obviously dan-
gerous; that children were in the habit of playing about the same
to the knowledge of defendant; that on the day of the accident the
injured child and other children, too young to appreciate the exist-
ing danger, were playing within a few feet of the unguarded ma-
chinery; that defendant saw such children in a place of danger and
where they were liable to be seriously injured as a result of their
playing at and about said machinery.  That nevertheless defendant
failed to warn the children of such danger or to protect them in any
way—and the injury resulted.

Did these facts place a duty upon defendant to warn this child?
Are these facts, if established, sufficient to make an issue for the

jury upon defendant's alleged negligence? The situation is created by defendant. It saw fit to locate this danger in a place equivalent to a public thoroughfare. It was responsible for its existence. The child was not a trespasser, but was rightfully present independent of invitation. He was, under the language of the complaint, in the presence of an unappreciated danger. This situation created a duty on the part of the defendant to exercise ordinary care under the circumstances for the protection of those coming about the agency who were unable to care for themselves. By reason of his youth he may reasonably be expected to follow childish curiosity or childish proclivities and impulses and those who are chargeable with a duty of care and caution toward him must calculate upon this and take precautions accordingly.

In Olesen v. Noren, 161 Minn. 113, 201 N. W. 296, in considering the question of negligence of an automobile driver toward a child on a coaster wagon in the street, we said:

"The presence of the child in the street called for greater caution than if he had been an adult. Any careful driver will always regard the presence of a child in the street as a red light ahead. We all know the frailties of childhood and youth. They may be moved by impulse, sudden change of mind, or act pursuant to a peculiar plan or design wholly unexpected by others. They are innocent, sometimes bent on innocent mischief, free from care, and at times unconscious of impending dangers. These peculiarities of childhood are common * * *."

Where such use is made of a public street, the party responsible for the condition must have regard to the reckless and thoughtless inclinations and traits of childhood. This rule applies even when the instrumentality is on private ground immediately adjacent to a public way. Kreiner v. Straubmuller, 30 Pa. Super. Ct. 609. Some courts hold that a child of very immature discretion is entitled to a warning against dangers of machinery, even when a trespasser. North Texas Const. Co. v. Bostick, 98 Tex. 239, 83 S. W. 12. In Kramer v. So. Ry. Co. 127 N. C. 328, 37 S. E. 468, 52 L. R. A. 359, it was held that, where defendant kept railroad ties piled in a street,

the defendant owed a duty toward a nontrespassing child playing thereon, to its knowledge, to take precautions to avoid injury.

By analogy to the doctrine of discovered peril, it would seem that the fact that defendant saw the child of tender years in such close proximity to the dangerous machinery, placed a duty upon it that could be performed only by giving warning to the child. Under such circumstances, a very high degree of vigilance is demanded by the requirement of ordinary care. We think this conclusion finds support in Gunderson v. N. W. Elev. Co. 47 Minn. 161, 49 N. W. 694: "The defendant was bound to use due care, in view of the fact that a child of tender years was then and there exposed to danger therefrom. It was negligent in failing so to do." The conclusion is strengthened by the doctrine of Depue v. Flatau, 100 Minn. 299, 111 N. W. 1, 8 L. R. A. (N. S.) 485. The jury should decide what inferences under the circumstances are permissible. Barbo v. Bassett, 35 Minn. 485, 29 N. W. 198. Other cases not involving children may be invoked in support by analogy of the principle that a violation of duty creates a liability, i. e., where one puts a fire on his own property and takes no steps to put out or prevent its spread. Farrell v. M. & R. R. Ry. Co. 121 Minn. 357, 141 N. W. 491, 45 L. R. A. (N. S.) 215. When one piles sand on his own property and it is blown by the wind onto plaintiff's property, there is liability. Dunsbach v. Hollister, 49 Hun, 352, 2 N. Y. Supp. 94. Where one knowingly permits a rotten tree to stand on his own property and it is blown down to the injury of a neighbor, there is liability. Gibson v. Denton, 4 App. Div. 198, 38 N. Y. Supp. 554. The facts alleged present a question for a jury whether under all the circumstances defendant violated its duty toward the child in not warning him of the nearby danger. Whether the child was guilty of contributory negligence would also be a jury question involving the age and intelligence of the child. The complaint commands an answer.

Affirmed.